725 A.2d 1154 (1999)
Robert C. BROWN, Plaintiff/Appellant,
v.
TOWNSHIP OF OLD BRIDGE, Defendant/Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 10, 1999.
Decided March 19, 1999.
*1159 Robert C. Brown, Old Bridge, plaintiff/appellant, pro se (Ann K. Brown, attorney, on the brief).
Robert T. Clarke, Warren, for defendant/respondent (Apruzzese, McDermott, Mastro & Murphy, attorneys; Mr. Clarke, of counsel and on the brief; Robert J. Merryman, on the brief).
Before Judges KING, WALLACE and NEWMAN. *1155 *1156 *1157
*1158 The opinion of the court was delivered by WALLACE, Jr., J.A.D.
This is the third appeal in this case. Plaintiff Robert C. Brown is a retired police officer of defendant Township of Old Bridge, (referred to as defendant or Township). Plaintiff contends: (1) defendant was barred from relitigating plaintiff's right to receive the collectively bargained long-term disability insurance benefits after a 1980 judicially enforced arbitration award recognized those benefits as binding against defendant; (2) the trial judge erred in reducing plaintiff's special compensation in the form of long-term disability payments by the amount of his PFRS retirement allowance because he erred in reading N.J.S.A. 40A:14-154 and the PFRS provision, N.J.S.A. 43:16A-7 "in para materia"; (3) the application of N.J.S.A. 40A: 14-154, constitutes an improper attachment, garnishment or assignment of plaintiff's special compensation in the form of long-term disability benefits; (4) N.J.S.A. 40A:14-154 is unconstitutional; (5) the trial judge erred in including cost of living adjustments (COLAs) in the calculation of plaintiff's special compensation in the form of long-term disability benefits; and (6) the trial judge erred in denying his motion to amend the complaint to include a claim for an injury plaintiff sustained in 1983. We affirm.

I
Plaintiff is a retired police officer of Township. He was employed by defendant from March 17, 1975 to August 31, 1988. Pursuant to the collective bargaining agreements negotiated by the Police Benevolent Association (PBA), plaintiff, over the years, received various benefits including long-term disability.
On September 28, 1981, plaintiff was shot in the line of duty. He returned to work, but continued to have recurring physical and psychological problems as a result of the incident. Plaintiff sought a disability retirement. On September 22, 1986, he met with the Township Council to discuss his eligibility for disability retirement benefits. Following this meeting, the Council passed a resolution providing in part:
WHEREAS, the list of requests from Patrolman Brown are as follows:
1. Full payment of salary until eligible for payments from the State Pension System.
2. Calculation of regular salary/base pay to conform with the same formula the Township of Old Bridge uses to make pension deductions.
3. Long-Term Disability Benefits pursuant to Article XII Sub. Sec. C of the Agreement between the Township of Old Bridge and the PBA Local No. 127.
4. Removal of the AEIF [Annual Earned Income Formula] provision contained in Article XII Sec. D, since the traumatic injury occurred during 1981.
5. Payment of 100% of all health benefits at the discretion of the Council, pursuant to N.J.S.A. 40A:10-23.
6. Payment of all accrued vacation, sick time, holiday and ETO time.
7. Payment of a $25,000 term life insurance policy, pursuant to Article XII Sub. Sec. H of the Agreement between the *1160 Township of Old Bridge and PBA Local No. 127.
NOW, THEREFORE, BE IT RESOLVED by the Township Council of the Township of Old Bridge that the Township Council accepts the proposal made by Patrolman Robert Brown for a Disability Retirement, and specifically grants the request for the seven (7) items enumerated above, with the condition that Patrolman Robert Brown voluntarily submit the pension papers to the State of New Jersey on or before September 28, 1986, and, on the condition, that all accrued vacation, sick, holiday and ETO time be verified by the Township Administration.
In September 1986, plaintiff applied for a disability pension with PFRS. In July 1988, PFRS approved plaintiff's application, retroactive to April 1, 1987. The amount of the pension, $14,615 per year was based on plaintiff's 1981 salary, the year plaintiff's disability arose.
Plaintiff retired from the police department on September 1, 1988. On September 19, 1988, he received his accumulated vacation and sick time benefits but not his other benefits. Plaintiff requested that defendant pay him his disability benefits. Defendant failed to pay these benefits.
As a result, on December 16, 1988, plaintiff filed a complaint against defendant seeking $2,224 per-month or $26,700 per-year (two-thirds of plaintiff's 1988 salary ($40,030 × 2/3 =$26,686.67)) in long-term disability insurance, and payment of his health insurance deductible pursuant to Article XII, section C of the then existing collective bargaining agreement. Article XII, section C of the then existing agreement, provided:
All employees will be covered by long-term disability insurance. This insurance would supplement any other benefits so that employees with long-term illnesses or serious accident [sic] (whether job connected or not) would receive a total of (2/3) their regular pay, after a waiting period of thirty (30) days. Such payments would continue until age sixty-five (65) for illness and/or life for [sic] accident.
Defendant filed an answer and separate defenses. Thereafter, defendant issued plaintiff $3,021.13 in long-term disability for the months of October, November and December 1988 ($26,700$14,615 (PFRS disability pension) = $12,085 per year or $1,007 per month).[1] Plaintiff refused to accept that check because he believed he was entitled to a greater amount.
Plaintiff moved and defendant cross-moved for summary judgment. On July 3, 1991, partial summary judgment was granted in plaintiff's favor. The judge determined that:
the Old Bridge Township Council Resolution [in which defendant had agreed to pay plaintiff long-term disability] of September 22, 1986 ("Resolution") is a valid and enforceable agreement between [plaintiff] and [defendant]. [Plaintiff] is entitled to enforce the terms of the Resolution.
The court denied defendant's cross-motion and scheduled a trial on damages. Following trial, the judge awarded plaintiff $75,616, representing past-due, long-term disability benefits from October 1, 1988 to July 1, 1991, and $10,961.52 in prejudgment interest. Plaintiff was also awarded $2,224 per month in long-term disability payments, beginning August 1, 1991, and payable for the remainder of his life. The judge held that plaintiff was not entitled to payment by defendant of his health insurance deductible or counsel fees.
The Township appealed, and for the first time argued that the September 22, 1986, resolution was unenforceable because it was preempted by N.J.S.A. 40A:14-154. This statute provides:
If a member or officer of the municipal police department or force is permanently disabled from injuries received while in the performance of his duties, and the chief or authority in charge of such police department or force shall recommend that special compensation be granted, and a physician appointed by the governing body of said municipality shall certify as to the probable *1161 permanency of such disability, the governing body of the municipality, in their discretion, by ordinance, may provide for special compensation to said disabled member or officer, designating the amount thereof and manner of payment either in a lump sum or by an annual allowance, but such special compensation plus any pension paid and any award for workmen's compensation shall not exceed the salary payable at the time of the sustaining of the injuries. The governing body of said municipality shall include appropriate budget items and provide for the payment of such special compensation.

[ (emphasis added).]
Plaintiff filed a cross-appeal from the denial of the payment of his health insurance deductible and counsel fees. In an unpublished opinion, we held in Brown v. Township of Old Bridge (A-6352-90T2 (App.Div.)) (Brown I,) certif. denied, 133 N.J. 440, 627 A.2d 1145 (1993) that N.J.S.A. 40A:14-154 preempted the field of "special compensation" in the form of supplemental disability payments and thus, the September 22, 1986 resolution was unenforceable because such a benefit could only be awarded by ordinance. Moreover, the amount awarded exceeded the limits authorized by N.J.S.A. 40A:14-154, or the amount of plaintiff's salary at the time of the injury. Ibid. That is, plaintiff had earned $21,924 in 1981, the year of his injury, and was awarded $26,700 per year in special compensation in the form of long-term disability and $14,616 per year in PFRS disability pension, for a total of $41,316. This was $19,393 more than his salary at the time of the injury. Thus, we reversed the partial summary judgment and award of damages in favor of plaintiff and remanded for further proceedings in accordance with our opinion. Plaintiff's petition for certification to the Supreme Court was denied. Brown v. Township of Old Bridge, 133 N.J. 440, 627 A.2d 1145 (1993).
At the remand hearing, plaintiff argued that Brown I had only decided that the September 22, 1986, resolution was preempted by N.J.S.A. 40A:14-154, and thus, he was still entitled to special compensation in the form of long-term disability benefits under the collective bargaining agreement. Defendant argued that the decision preempted any action by a municipality, whether by resolution or by collective bargaining. The trial judge recognized that both its prior decision and our decision were limited to the issue of whether plaintiff was entitled to long-term disability benefits under the resolution. Nevertheless, the judge held that N.J.S.A. 40A:14-154 also preempted an award of such benefits pursuant to the collective bargaining agreement. The judge denied plaintiff's motion to amend his complaint to include a new party, the local PBA, and a new claim under the Americans With Disabilities Act (ADA), 42 U.S.C.A. §§ 12101 to 12213 (1997). An order was entered dismissing plaintiff's complaint on that same date.
Plaintiff filed his second appeal. During oral argument in Brown v. Township of Old Bridge (A-1551-93T5) (App.Div.1996) (Brown II, certif. denied, 144 N.J. 587, 677 A.2d 759 (1996), we asked the parties to supplement the record with copies of relevant collective bargaining agreements and insurance policies. A second oral argument was conducted on November 1, 1995. In Brown II, we held that N.J.S.A. 40A:14-154 applied "to all municipal benefits for permanent disability given to police officers whether pursuant to ordinance or by negotiated agreement." Nevertheless, we found that "[i]n light of the history of the negotiated provisions addressing disability and the reliance of the members of the union since at least the late 1970's, nullification of the negotiated disability benefits here would be unfair." Consequently, we held that equitable estoppel should apply to require defendant to enforce the disability provisions in the collective bargaining agreement, subject to the limitations in N.J.S.A. 40A:14-154, that such benefits plus any pension paid and any compensation benefits "shall not exceed plaintiff's salary at the time of the injury."
We declined to address plaintiff's argument that N.J.S.A. 40A:14-154 was unconstitutional because plaintiff had failed to raise the argument in Brown I or on remand. Ibid. In addition, we concluded that "[t]he failure to join the PBA as a party below did not affect the trial judge's authority to adjudicate *1162 the dispute between the parties present." Further, we held the trial judge did not abuse his discretion in denying plaintiff's motion to amend his complaint which motion was filed after the appeal and remand.
We denied both parties' motion for reconsideration and the Supreme Court denied certification. Brown v. Township of Old Bridge, 144 N.J. 587, 677 A.2d 759 (1996).
On remand, the trial judge held a conference on September 5, 1996. He listed the issues raised by the parties at the conference as follows:
1. Does the collective bargaining agreement require that plaintiff's disability payments be off-set by his pension payments?
2. Do the provisions of R.S. 40A:14-154 (Special Compensation statute) apply providing a ceiling for the disability benefits plaintiff may receive?
3. Are the provisions of R.S. 40A:14-154 constitutional as they apply to this plaintiff?
4. In applying R.S. 40A:14-154, is the date of injury to be 1981 or 1983?
5. In applying R.S. 40A:14-154, what pension payment is to be considered? The original pension payment plaintiff received or his pension payments as enhanced by cost of living increases?
6. In applying R.S. 40A:14-154, how does the Court factor any worker's compensation award the plaintiff received?
7. Do the provisions of the collective bargaining agreement requiring that earned income be deducted from any permanent disability benefits to which plaintiff is entitled apply in this situation?
In November 1996, plaintiff moved to amend his pleadings to add a claim for an injury sustained in 1983, thereby changing the date from 1981 to 1983, which would have had the effect of increasing the ceiling level for calculation of special compensation. Plaintiff alleged that on October 31, 1983, he dislocated his right shoulder while on duty and as a result was unable to return to full-time employment. He also alleged he had received a worker's compensation award dated October 2, 1986, for both the 1981 and the 1983 injury.
Following oral argument the judge rejected plaintiff's constitutional challenge to N.J.S.A. 40A:14-154, and his motion to amend the pleadings, finding both untimely and unsupported by the evidence. In determining the amount of plaintiff's special compensation in the form of long-term disability payments, the judge held that plaintiff's salary in 1981, the time of the injury, would be used to set the ceiling level. Further, the judge held that plaintiff's special compensation plus any PFRS State retirement benefits, including any COLAs, could not exceed his 1981 salary. The judge asked the parties to submit information regarding plaintiff's 1981 salary and the amount of retirement benefits he had received in order to calculate the amount of damages. By letter dated May 1, 1997, the judge concluded that defendant owed plaintiff $50,193.77 for past-due permanent disability benefits and $14,587.68 for pre-judgment interest. Further, plaintiff was awarded future long-term disability payments to be calculated in accordance with the following formula, 1981 salary minus PFRS, minus COLAs equals Special Compensation. This appeal followed.

II
Plaintiff argues that defendant was barred from relitigating his right to receive the collectively bargained long-term disability insurance benefits after a 1980 judicially enforced arbitration award recognized those benefits as binding against defendant. Plaintiff contends that Policeman's Benevolent Ass'n, Local 292 v. Borough of North Haledon, 305 N.J.Super. 454, 703 A.2d 1 (App. Div.1997), which was decided after Brown II, resolves this issue in his favor.
The arbitration award resulted from a June 1980 joint grievance of Local PBA 127 and Patrolman Robert Stawicki (Stawicki), filed against defendant because it had denied Stawicki's claim for long-term disability under the collective bargaining agreement. Article XII, section C of the collective bargaining agreement effective January 1, 1978 to December 31, 1980, which is substantially *1163 identical to the agreement effective when plaintiff was injured, provided:
All employees will be covered by long-term disability insurance. This insurance would supplement any other benefits so that employees with long-term illnesses or serious accident [sic] (whether job connected or not) would receive a total of Two-thirds [sic] their regular pay, after a waiting period of thirty (30) days. Such payments would continue until age 65 for illness and/or life for accident.
The arbitrator held that defendant had violated Article XII, section C by failing to provide Stawicki with long-term disability benefits. The arbitrator found the long-term disability payment was intended to augment state disability and worker's compensation, benefits "so that employees would receive 2/3 their regular pay." Thus, Stawicki was entitled to two-thirds of his salary less any worker's compensation or State insurance benefits. The arbitrator did not refer to N.J.S.A. 40A:14-154. The arbitrator's decision was confirmed by the Superior Court on October 1, 1980.
In his complaint for long-term disability payments, plaintiff referred to Stawicki's October 1, 1980 arbitration award. Plaintiff also raised in Brown II whether defendant was "barred through principles of res judicata and estoppel from challenging [his] right to receive long-term disability benefits awarded under the collective bargaining agreement after a judicially-enforced arbitration award recognized those benefits as binding against the township." We rejected this argument in Brown II.
"Under the law-of-the-case doctrine, decisions of law made in a case should be respected by all other lower or equal courts during the pendency of that case." Lanzet v. Greenberg, 126 N.J. 168, 192, 594 A.2d 1309 (1991). The law-of-the-case doctrine "most commonly applies to the binding nature of appellate decisions upon a trial court if the matter is remanded for further proceedings, or upon a different appellate panel which may be asked to reconsider the same issue in a subsequent appeal." Slowinski v. Valley Nat'l Bank, 264 N.J.Super. 172, 179, 624 A.2d 85 (App.Div.1993) (citing State v. Hale, 127 N.J.Super. 407, 410-11, 317 A.2d 731 (App.Div.1974)). It is "restricted to preventing relitigation of the same issue in the same suit." Slowinski supra, 264 N.J.Super. at 180-81, 624 A.2d 85 (emphasis omitted). Thus, "where there is an unreversed decision of a question of law or fact made during the course of litigation, such decision settles that question for all subsequent stages of the suit." Bahrle v. Exxon Corp., 279 N.J.Super. 5, 21, 652 A.2d 178 (App.Div. 1995), aff'd, 145 N.J. 144, 678 A.2d 225 (1996) (citing Slowinski, supra, 264 N.J.Super. at 179, 624 A.2d 85). However, the law-of-the-case doctrine, unlike the doctrine of res judicata, operates as a discretionary rule of practice and not one of law. Slowinski, supra, 264 N.J.Super. at 179, 624 A.2d 85 (citing State v. Hale, supra, 127 N.J.Super. at 410-11, 317 A.2d 731). As noted above, in Brown II we found "no merit" to the arbitration argument. Consistent with the law-of-the-case principles this issue has been decided and we need not address it here.
Moreover, our recent decision in Policeman's Benevolent Ass'n, Local 292, supra, 305 N.J.Super. at 454, 703 A.2d 1, does not warrant relitigation of this issue. In that case we held that a public-sector arbitration case was governed by the Arbitration Act, N.J.S.A. 2A:24-1 to -11, and thus, a prevailing party seeking judicial confirmation of an arbitration award was bound by the three-month period of limitations set forth in N.J.S.A. 2A:24-7.[2] That case does not stand for the proposition that defendant should be bound by the prior arbitration award in favor of Stawicki, particularly since the arbitrator did not consider the effect of N.J.S.A. 40A:14-154 on the payment of long-term disability insurance.
Even if we consider the merits of plaintiff's argument, we reach the same result. "In appropriate circumstances, arbitration awards may be given collateral estoppel *1164 effect in subsequent judicial proceedings." Konieczny v. Micciche, 305 N.J.Super. 375, 384, 702 A.2d 831 (App.Div.1997); Nogue v. Estate of Santiago, 224 N.J.Super. 383, 385-86, 540 A.2d 889 (App.Div.1988). But here the arbitration award in favor of Stawicki cannot be binding upon defendant because statutes covering public employee benefits, in this case N.J.S.A. 40A:14-154, cannot "be contravened by negotiated agreement." State v. State Supervisory Employees Ass'n, 78 N.J. 54, 80, 393 A.2d 233 (1978). "[W]here a statute or regulation sets a maximum level of rights or benefits for employees on a particular term and condition of employment, no proposal to affect that maximum is negotiable nor would any contractual provision purporting to do so be enforceable." Id. at 81-82, 393 A.2d 233.
Here N.J.S.A. 40A:14-154 set a maximum level of special compensation which when combined with the pension award and worker's compensation benefits cannot exceed the retired officer's salary at the time of the injury. In contrast, the collectively bargained for agreement provided that a retired officer was entitled to long-term disability equal to two-thirds of his or her regular pay at the time of retirement, and supplemental to other benefits. Thus, the collective bargaining agreement which provided for benefits in excess of the statutory limits of N.J.S.A. 40A:14-154 is not enforceable. Under these circumstances, the arbitrator's award in favor of Stawicki may not be given collateral estoppel effect in this proceeding.

III
Plaintiff next argues the trial judge erred in reading N.J.S.A. 40A:14-154 and the PFRS provision, N.J.S.A. 43:16A-7 "in para materia" and therefore the term "pension" in N.J.S.A. 40A:14-154 does not include a "retirement allowance" under N.J.S.A. 43:16A-7. Thus, he argues the trial judge erred in reducing his special compensation in the form of long-term disability pursuant to N.J.S.A. 40A:14-154, by the amount of his PFRS "retirement allowance" of $14,615 payable pursuant to N.J.S.A. 43:16A-7. Plaintiff concedes that we rejected this argument in his previous appeal, but, nevertheless he contends that is not a bar from relitigating this issue again in light of the recent decision in Wolfersberger v. Borough of Point Pleasant Beach, 305 N.J.Super. 446, 702 A.2d 1294 (App.Div.1996), aff'd, 152 N.J. 40, 702 A.2d 1284 (1997).
As noted above, N.J.S.A. 40A:14-154 provides in part that "special compensation plus any pension paid and any award for workmen's compensation shall not exceed the salary payable at the time of the sustaining of the injuries." (emphasis added). Municipalities are authorized to award special compensation pursuant to N.J.S.A. 40A:14-27, which provides:
If a member or officer of the paid or part-paid fire department or force is permanently disabled from injuries received while in the performance of his duties and the chief or official in charge of such fire department or force shall recommend that special compensation be granted and a physician appointed by the governing body of said municipality shall certify as to the probable permanency of such disability, the governing body of the municipality in their discretion, by ordinance, may provide for special compensation to said disabled member or officer designating the amount thereof and manner of payment, either in a lump sum or by an annual allowance, but such special compensation plus any pension paid and any award for workmen's compensation shall not exceed the salary payable at the time of the sustaining of the injuries. The governing body of said municipality shall include appropriate budget items and provide for the payment of such special compensation.
The PFRS provision for guaranteed retirement benefits for permanent and total disability is set forth in N.J.S.A. 43:16A-7:
(1) Upon the written application by a member in service, by one acting in his behalf or by his employer any member may be retired on an accidental disability retirement allowance; provided, that the medical board, after a medical examination of such member, shall certify that the member is permanently and totally disabled as a direct result of a traumatic event occurring during *1165 and as a result of the performance of his regular or assigned duties and that such disability was not the result of the member's willful negligence and that such member is mentally or physically incapacitated for the performance of his usual duty and of any other available duty in the department which his employer is willing to assign to him. The application to accomplish such retirement must be filed within five years of the original traumatic event, but the board of trustees may consider an application filed after the five-year period if it can be factually demonstrated to the satisfaction of the board of trustees that the disability is due to the accident and the filing was not accomplished within the five-year period due to a delayed manifestation of the disability or to other circumstances beyond the control of the member.
(2) Upon retirement for accidental disability, a member shall receive an accidental disability retirement allowance which shall consist of:
(a) An annuity which shall be the actuarial equivalent of his aggregate contributions and
(b) A pension in the amount which, when added to the member's annuity, will provide a total retirement allowance of 2/3 of the member's actual annual compensation for which contributions were being made at the time of the occurrence of the accident or at the time of the member's retirement, whichever provides the largest possible benefit to the member.

[ (emphasis added).]
Statutes which deal with the same matter or subject and which seek to achieve the same overall legislative purpose should be read "in pari materia." Mimkon v. Ford, 66 N.J. 426, 433, 332 A.2d 199 (1975) (citing Gualano v. Board of School Estimate of Elizabeth School Dist., 72 N.J.Super. 7, 23, 177 A.2d 580 (Law Div.1962), aff'd, 39 N.J. 300, 188 A.2d 569 (1963), and Clifton v. Passaic Cty. Bd. of Taxation, 28 N.J. 411, 421, 147 A.2d 1 (1958)). "This rule of statutory construction derives from the reasonable presumption that legislators are aware of relevant prior legislation." Mimkon, supra, 66 N.J. at 433, 332 A.2d 199 (citing State v. Federanko, 26 N.J. 119, 129, 139 A.2d 30 (1958)). "While the rule most obviously applies when the statutes in question were enacted during the same session or went into effect at the same time, ... or where they make specific reference to one another, ... it may appropriately be applied even when the statutes were adopted at different times and make no reference to each other." Id. at 434, 332 A.2d 199 (citing Fried v. Kervick, 34 N.J. 68, 70-71, 167 A.2d 380 (1961); State v. Wasserman, 75 N.J.Super. 480, 487-88, 183 A.2d 467 (App.Div.1962), aff'd, 39 N.J. 516, 189 A.2d 218 (1963); 2A Sutherland, Statutory Construction § 51.03 (Sands ed.1973)). "Statutes in pari materia are to be construed together when helpful in resolving doubts or uncertainties and the ascertainment of legislative intent." Camden v. South Jersey Port Corp., 312 N.J.Super. 387, 398, 711 A.2d 978 (App.Div.1998), certif. denied, 157 N.J. 542, 724 A.2d 801 (1998).
In Brown II, we reviewed the legislative history of N.J.S.A. 40A:14-154 and N.J.S.A. 43:16A-7. We noted that "PFRS was established in 1944 to provide for retirement benefits for police and firemen," citing Seire v. Police & Fire Pension Comm'n of Orange, 6 N.J. 586, 591, 80 A.2d 97 (1951) ("By the 1944 act, the legislature created a statewide pension system for full-time policemen and firemen designed to ensure the uniform protection of all such public officers through the medium of pensions payable from a fund maintained upon a sound actuarial basis"). We explained that after the enactment of PFRS, then-Governor Driscoll vetoed several bills proposed to supplement the benefits received under the State retirement system on the ground that the State should seek to strengthen the State program rather than authorizing independent municipal action, which had apparently failed in the past and had required State intervention. The Governor's veto message had also expressed concern "with any form of municipal benefit that overlapped State retirement benefits for permanent disability." In 1948, the Governor signed into law N.J.S.A. 40:47-12.10 and .11 *1166 (L.1948, c. 304), the predecessor to N.J.S.A. 40A:14-154, "authorizing municipalities by ordinance to `make an award of damages' for permanent disability provided that the award plus any pension and worker's compensation paid did not exceed the employee's wages while employed." Although we did not specifically refer to the different terms used in N.J.S.A. 40A:14-154 (pension) and N.J.S.A. 43:16A-7 (retirement allowance), we concluded in Brown II that pursuant to N.J.S.A. 40A:14-154, "compensation for permanent disability received from the municipality, plus State retirement benefits, may not exceed the employee's salary at the time of injury." Thus, in Brown II, we held that plaintiff's State PFRS "retirement allowance" constituted a pension for purposes of the calculation and must be considered in awarding special compensation pursuant to N.J.S.A. 40A:14-154.
Moreover, Wolfersberger v. Borough of Point Pleasant Beach, supra, 152 N.J. at 40, 702 A.2d 1284, does not support plaintiff's argument that we should permit relitigation of this issue. In Wolfersberger, plaintiff, a policeman, retired after twenty-three years of actual service with the defendant. 305 N.J.Super. at 448, 702 A.2d 1294. Plaintiff had served previously in the armed forces and was able to purchase two years of pension service based on that experience, thereby crediting him with twenty-five years of service and qualifying him for retirement. Ibid. See N.J.S.A. 43:16A-11.11 (Purchase of service credit for civilian employment or U.S. military service by members of police or firemen's retirement system). On the date of his retirement, N.J.S.A. 40A:10-23 (Payment of premiums after retirement) provided that "[t]he employer may, in its discretion, assume the entire cost of such coverage and pay all of the premiums for employees who have retired on a disability pension or after 25 years' or more service with the employer...." Plaintiff maintained he had twenty-five years of service because N.J.S.A. 40A:10-23 and N.J.S.A. 43:16A-11.11 "are `in pari materia' and, therefore, `service' in both statutes should be construed to include credited service." Id. at 449, 702 A.2d 1294. We disagreed and held that plaintiff's "in pari materia argument disregards the significant differences in the language, purposes, and legislative history of the two statutes upon which he relies." Ibid. We pointed out that "plaintiff's purchased credits satisfy the prerequisites for a `special retirement' pension pursuant to N.J.S.A. 43:16A-11.1 because that statute defines eligibility for such a pension in terms of `creditable service.'" Id. at 450, 702 A.2d 1294. However, we found "no comparable statutory provisions authorize counting `creditable' or credited service toward the 25 years of service called for by N.J.S.A. 40A:10-23 as it existed when [the plaintiff] retired." Ibid. Thus, we interpreted N.J.S.A. 40A:10-23 to require twenty-five years of actual service. Id. at 452, 702 A.2d 1294. The Supreme Court affirmed substantially for the reasons expressed in our opinion. Wolfersberger v. Borough of Point Pleasant Beach, 152 N.J. 40, 702 A.2d 1284 (1997).
Wolfersberger did not address the relationship between the relevant statutes in this case, N.J.S.A. 40A:14-154 and N.J.S.A. 43:16A-7, and is distinguishable on the facts. Beyond that we are in agreement with the trial judge's conclusion that the terms "pension paid" in N.J.S.A. 40A:14-154 and "retirement allowance" in N.J.S.A. 43:16A-7 represent a "distinction without a difference."
"[R]etirement allowance" is defined in N.J.S.A. 43:16A-1 as a "pension plus the annuity" and a "pension" is defined in N.J.S.A. 43:16A-1 as "payments for life derived from contributions by the employer." In our view, distinguishing "pensions" from "retirement allowances" would defeat the purpose of N.J.S.A. 40A:14-154, to limit special compensation. Therefore, we conclude the term "pension" in N.J.S.A. 40A:14-154 includes a PFRS "retirement allowance." We agree with the trial judge's reasoning that:
The obvious purpose of the Special Compensation Act is to assure that a disabled officer will not earn more money by not working than he or she did working as a police officer or fireman. Therefore, it really makes no difference whether the payments are styled as pension payments *1167 or retirement payments and so on in the context and intent of the statute.

IV
Plaintiff argues for the first time on appeal that application of N.J.S.A. 40A:14-154 constitutes an improper attachment, garnishment or assignment of his long-term disability benefits.
"It is a well-settled principle that we will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available `unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Skripek v. Bergamo, 200 N.J.Super. 620, 629, 491 A.2d 1336 (App.Div.) (quoting Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973)), certif. denied, 102 N.J. 303, 508 A.2d 189 (1985); see also Chalef v. Ryerson, 277 N.J.Super. 22, 28-29, 648 A.2d 1139 (App.Div.1994); Hamilton, Johnston, & Co., Inc. v. Johnston, 256 N.J.Super. 657, 667, 607 A.2d 1044 (App.Div.), certif. denied, 130 N.J. 595, 617 A.2d 1219 (1992); Saul v. Midlantic Nat. Bank/South, 240 N.J.Super. 62, 82, 572 A.2d 650 (App.Div.), certif. denied, 122 N.J. 319, 585 A.2d 338 (1990).
Despite the opportunity to do so, plaintiff did not raise this issue below. We find no matter of great public interest to warrant our consideration of this argument. Moreover, plaintiff was ultimately awarded benefits within the limits of N.J.S.A. 40A:14-154. Any reduction in the amount of benefits plaintiff had initially been awarded in the September 22, 1986 resolution was based on our interpretation and application of N.J.S.A. 40A:14-154, and not as a result of a garnishment, attachment or assignment, in violation of N.J.S.A. 17:18-12, N.J.S.A. 17B:24-8, and N.J.S.A. 17B:24-9.

V
Plaintiff next argues that N.J.S.A. 40A:14-154 is unconstitutional.[3] On remand he raised this argument before the trial judge, but the judge concluded that based upon our decision in Brown II it would be "inappropriate" for him to address the constitutionality issue "at this late date." As plaintiff raised this issue below, we will consider his arguments addressed to the constitutionality of N.J.S.A. 40A:14-154.
Initially, we state the general guiding principles in determining constitutionality. "Statutes are presumed to be constitutional." State v. One 1990 Honda Accord, 154 N.J. 373, 377, 712 A.2d 1148 (1998); General Motors Corp. v. City of Linden, 150 N.J. 522, 532, 696 A.2d 683 (1997). "The Court will invalidate a statute only if it is clearly repugnant to the Constitution." General Motors Corp., supra, 150 N.J. at 532, 696 A.2d 683 (citing Newark Superior Officers Ass'n v. City of Newark, 98 N.J. 212, 222, 486 A.2d 305 (1985)); Town of Secaucus v. Hudson County Bd. of Taxation, 133 N.J. 482, 492-93, 628 A.2d 288 (1993), cert. denied, 510 U.S. 1110, 114 S.Ct. 1050, 127 L.Ed.2d 372 (1994). The party "challenging the constitutionality of a statute bears the burden of establishing its unconstitutionality." State v. One 1990 Honda Accord, supra, 154 N.J. at 377, 712 A.2d 1148; New Jersey Apartment Ass'n, Inc. v. Director, Div. of Local Gov. Services, Dept. of Community Affairs, 304 N.J.Super. 445, 454, 701 A.2d 452 (App.Div.1997), certif. granted, 153 N.J. 403, 709 A.2d 796 (1998).
In analyzing the constitutionality of a statute "[o]ne of the basic guidelines... is `the presumption that the legislature acted with existing constitutional law in mind and intended the act to function in a constitutional manner.'" NYT Cable TV v. Homestead at Mansfield, Inc., 111 N.J. 21, 26, 543 A.2d 10 (1988) (citing State v. Profaci, 56 N.J. 346, 349, 266 A.2d 579 (1970)). "Where reasonable minds might differ as to *1168 the constitutionality of the means devised by the lawmakers to serve a public purpose, the courts should respectfully defer." D.J.L. v. Armour Pharm. Co., 307 N.J.Super. 61, 75, 704 A.2d 104 (Law Div.1997) (citing Roe v. Kervick, 42 N.J. 191, 229, 199 A.2d 834 (1964)).
We turn now to plaintiff's various constitutional challenges. Plaintiff first argues that the application of N.J.S.A. 40A:14-154 to this case impaired his right to contract under the Federal Constitution. The United States Constitution, art I, § 10, provides that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts...." The New Jersey Constitution, N.J. Const. art. IV, § 7, ¶ 3, provides a similar, parallel prohibition against the state legislature. The federal and state contract "constitutional provisions are construed and applied in the same way to provide the same protection." Matter of Recycling & Salvage Corp., 246 N.J.Super. 79, 100, 586 A.2d 1300 (App.Div.1991) (citing Fidelity Union Trust Co. v. New Jersey Highway Auth., 85 N.J. 277, 299-300, 426 A.2d 488, appeal dismissed, 454 U.S. 804, 102 S.Ct. 76, 70 L.Ed.2d 73 (1981)). Thus, if the statute is valid under the federal contract clause, then it is valid under the parallel state provision as well. Matter of Recycling & Salvage Corp., supra, 246 N.J.Super. at 100, 586 A.2d 1300.
The freedom against impairment of contracts under the Federal and State Constitutions however, is not absolute. "Although the language of the federal contract clause is absolute on its face, its prohibition against the impairment of contracts must be accommodated to the inherent police power of the states to safeguard the vital interests of their residents." Ibid. (citing Exxon Corp. v. Eagerton, 462 U.S. 176, 190, 103 S.Ct. 2296, 2305, 76 L.Ed.2d 497, 509-10 (1983)). The constitutional guaranty of the freedom to contract does not deny "the legislative branch of the government authority to impose those reasonable safeguards which, in its judgment, are necessary to the public welfare." Fried v. Kervick, 34 N.J. 68, 83, 167 A.2d 380 (1961). "The liberty is protected against arbitrary restrictions, not prohibitions established in the interest of the community." Ibid; see also McLean v. State of Arkansas, 211 U.S. 539, 547, 29 S.Ct. 206, 208, 53 L.Ed. 315, 319 (1909) ("[T]he liberty of contract is not universal, and is subject to restrictions passed by the legislative branch of the government in the exercise of its power to protect the safety, health, and welfare of the people"). A state may thus
in the exercise of the police power, enact a statute to promote the public health, safety, morals or general welfare. Such a statute, because of retroactive application or otherwise, may diminish in value or totally destroy an individual's right, whether in property as such or arising out of contract, provided that the public interest to be promoted sufficiently outweighs in importance the private right which is impaired.
[Rothman v. Rothman, 65 N.J. 219, 225, 320 A.2d 496 (1974) (citations omitted).]
To be unconstitutional under the federal contract clause, legislation:
(1) must substantially impair a contractual relationship; (2) must lack a significant and legitimate public purpose; and (3) must be based upon unreasonable conditions and be unrelated to appropriate governmental objectives.
[State Farm Mut. Auto. Ins. Co. v. State, 124 N.J. 32, 64, 590 A.2d 191 (1991) (citing Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 411-12, 103 S.Ct. 697, 704-05, 74 L.Ed.2d 569, 580-81 (1983)).]
See also Oshkosh Waterworks Co. v. City of Oshkosh, 187 U.S. 437, 446, 23 S.Ct. 234, 237, 47 L.Ed. 249, 253 (1903) ("The contract clause of the Constitution of the United States has reference only to a statute of a state enacted after the making of the contract whose obligation is alleged to have been impaired").
Applying these principles here, the Township's contractual obligation to plaintiff did not arise until, at the earliest, 1981, the date of plaintiff's injury, or more likely 1986, the year in which the collective bargaining agreement applicable to this case was effective and the Township's resolution was passed. We reject plaintiff's contention that N.J.S.A. 40A:14-154 impaired an existing contract *1169 right because the collective bargaining agreement, was in effect when he was hired by defendant in 1975. N.J.S.A. 40A:14-154 was enacted in 1971 before plaintiff was hired as a policeman. Thus, plaintiff cannot establish that N.J.S.A. 40A:14-154 "substantially impaired" an existing contractual relationship, since the contract was executed after the enactment of the statute. In short, the application of N.J.S.A. 40A:14-154 to this case does not violate the federal or state constitutional contract clause.
Plaintiff next contends N.J.S.A. 40A:14-154 violates the Equal Protection Clause of the Fourteenth Amendment. This Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320 (1985).
Plaintiff does not contend the classification employed in N.J.S.A. 40A:14-154 implicates any fundamental interest or suspect class which would mandate the application of a strict scrutiny standard of judicial review. Instead, he argues a distinction between these police officers and other municipal police officers and municipal employees lacks any rational relation to the governmental objectives sought to be advanced by the statute.
Where neither a suspect classification or a fundamental right is involved, we must uphold the constitutionality of the statute " `so long as it bears a rational relation to some legitimate end.'" Vacco v. Quill, 521 U.S. 793, ___, 117 S.Ct. 2293, 2297, 138 L.Ed.2d 834, 841 (1997) (quoting Romer v. Evans, 517 U.S. 620, 631, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855, 865 (1996)). See also 515 Assocs. v. City of Newark, 132 N.J. 180, 197, 623 A.2d 1366 (1993). Under the rational basis test the classification drawn by the statute is presumed to be valid and will be sustained if it is "rationally related to a legitimate state interest." Cleburne, supra, 473 U.S. at 440, 105 S.Ct. at 3254, 87 L.Ed.2d at 320; Drew Assocs. of N.J., L.P. v. Travisano, 122 N.J. 249, 264, 584 A.2d 807 (1991). The legislation may be justified upon any statement of facts reasonably conceived. Bowen v. Gilliard, 483 U.S. 587, 601, 107 S.Ct. 3008, 3017, 97 L.Ed.2d 485, 501 (1987).
Moreover, "[i]f the classification has some `reasonable basis,' it does not offend the Constitution simply because the classification `is not made with mathematical nicety or because in practice it results in some inequality.'" Ibid. (quoting Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369, 377 (1911)). " `The problems of government are practical ones and may justify, if they do not require, rough accommodations illogical, it may be, and unscientific.'" Bowen, supra, 483 U.S. at 601, 107 S.Ct. at 3017, 97 L.Ed.2d at 501 (quoting Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69-70, 33 S.Ct. 441, 443, 57 L.Ed. 730, 734 (1913)).
The "equal protection safeguard is offended `only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective.'" Rinier v. State, 273 N.J.Super. 135, 141, 641 A.2d 276 (App.Div.) (quoting New Jersey State Bar Ass'n v. Berman, 259 N.J.Super. 137, 146, 611 A.2d 1119 (App.Div.1992)), certif. denied, 138 N.J. 269, 649 A.2d 1288 (1994), cert. denied, 514 U.S. 1016, 115 S.Ct. 1358, 131 L.Ed.2d 216 (1995). In applying the equal protection clause to social or economic legislation, such as in this case, we are required to give the legislature "wide latitude" in making classifications, as "the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes." Cleburne, supra, 473 U.S. at 440, 105 S.Ct. at 3254, 87 L.Ed.2d at 320.
Here the legislature wanted to insure that police officers who were injured while in the performance of their duties could receive special compensation, particularly in instances where the officer's period of service was shortened as a result of the injury. The means selected in this case, the selection of officers permanently disabled due to injuries sustained while in the course of their duties, was rationally related to that interest. Further, *1170 the limitation of the amount of compensation addressed the state's interest in safeguarding municipal revenues and insuring that police officers did not receive greater compensation for not working because of a disability than for working.
Moreover, the fact the statute does not address other municipal employees or police officers who were injured while off-duty does not render N.J.S.A. 40A:14-154 irrational or unconstitutional. "A statute does not violate the Equal Protection Clause merely because in practice it may result in some inequality. If a statutory distinction has some reasonable basis, `a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.'" Whitaker v. DeVilla, 147 N.J. 341, 358, 687 A.2d 738 (1997) (quoting Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501 (1970)). See also Murphy v. Allstate Ins. Co., 252 N.J.Super. 280, 286, 599 A.2d 916 (App.Div. 1991) ("Imperfect classifications that are part of a reasonable legislative scheme do not violate the equal protection clause").
Here the statutory distinction was "rationally related to a legitimate state interest," and thus N.J.S.A. 40A:14-154 does not violate the Equal Protection Clause of the Federal Constitution. Although the application of N.J.S.A. 40A:14-154, may, in effect, limit the amount of long-term benefits paid to municipal police officers injured while on duty but not to other municipal employees, the statute is still constitutional, because the statutory distinction is rationally related to a legitimate state interest. We note also that the legislature made similar distinctions in enacting otherwise identical statutes for county policemen, N.J.S.A. 40A:14-116, and firemen, N.J.S.A. 40A:14-27, two other dangerous positions of employment. We conclude that N.J.S.A. 40A:14-154 does not violate the Equal Protection Clause of the Fourteenth Amendment.
Plaintiff also argues that N.J.S.A. 40A:14-154 is "special legislation" prohibited by the New Jersey Constitution. The State Legislature is prohibited from passing "special" legislation under, art. IV, § 7, ¶7, of the New Jersey Constitution, which provides that "[n]o general law shall embrace any provision of a private, special or local character." " `The test of whether a law constitutes special legislation is essentially the same as that which determines whether it affords equal protection of the laws.'" Phillips v. Curiale, 128 N.J. 608, 627, 608 A.2d 895 (1992) (quoting Mahwah Township v. Bergen County Bd. of Taxation, 98 N.J. 268, 285, 486 A.2d 818, cert. denied, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985)). "Whether a law is special or general depends on the class of persons affected by the law." Jordan v. Horsemen's Benevolent and Protective Ass'n, 90 N.J. 422, 432, 448 A.2d 462 (1982). "The vice in special laws is that they foster favoritism. The purpose of the constitutional prohibitions is to prevent abuse of the legislative process by picking favorites." Jordan, supra, 90 N.J. at 433, 448 A.2d 462. Thus, "[i]n effect, the prohibitions eliminate the invidious threat of unfair preferences and restrict the legislative power to grant favors to some at the expense of others." Ibid.
In considering whether legislation is general or special, we must apply a three-part test and determine:
(1) the purpose and subject matter of the statute; (2) whether any persons are excluded who should be included; and (3) whether the classification is reasonable, given the purpose of the statute.
[Jordan, supra, 90 N.J. at 432, 448 A.2d 462 (citing Vreeland v. Byrne, 72 N.J. 292, 298-301, 370 A.2d 825 (1977)).]
Applying these factors here, the purpose of the statute is to allow officers injured on the job to receive special compensation, balanced by the state's interest in safeguarding municipal revenues and insuring that police officers did not receive greater compensation for not working than for working. That is a valid state purpose.
The next inquiry is whether any person or group similarly situated to those covered by the statute is excluded from the operations of the statute. Phillips, supra, 128 N.J. at 628, 608 A.2d 895. Here N.J.S.A. 40A:14-154 applies to all police officers permanently disabled due to injuries sustained during the course of their duties, and thus no similar *1171 group is excluded. "That a statute may be valid as a general law even if only one entity is covered is settled." Ibid.
But plaintiff claims disparate and selective treatment in that N.J.S.A. 40A:14-154 was only applied to him, and not to Officer Terry Fricks, one of the defendants in the back-to-back case, Cannon v. Fricks (A-2563-97T3). Plaintiff contends he was denied long-term disability payments in contrast to Fricks, who retired on the same day, and received an annual long-term disability benefit of $12,379. However, plaintiff was offered $12,085 per year and he refused to accept that amount.
Fricks was injured in 1984 and retired in 1988. He initially accepted long-term disability under the same formula as applied to plaintiff. In accordance with our decision in Brown II, defendant discontinued the benefits Fricks had been awarded by resolution, and passed an ordinance awarding Fricks special compensation in the form of long-term disability payments subject to a PFRS retirement allowance offset. Defendant contends that a similar ordinance was not passed with respect to plaintiff because his claim was in litigation and because he had rejected long-term benefits under that same formula. Thus, defendant offered plaintiff long-term disability payments in accordance with its calculations, but plaintiff refused to accept them.
Moreover, as defendant argues the disparity between the benefits payable to Fricks and that payable to plaintiff were due to the specific circumstances of the officers, and not because the statute constituted "special legislation". Fricks was injured after plaintiff, and thus his disability payments were based upon a higher salary. Fricks also received a smaller pension than plaintiff and thus his pension offset was less, resulting in a greater long-term disability payment.
The last inquiry is whether the classification is reasonable, given the purpose of the statute. Jordan, supra, 90 N.J. at 432, 448 A.2d 462. As we noted under the equal protection analysis the classification was reasonable. The legislation was enacted in recognition of the risks associated with police work and the concern that officers who were permanently disabled by on-the-job injuries may, due to a short length of service, only be eligible for a reduced PFRS pension. We conclude N.J.S.A. 40A:14-154 is not "special legislation" prohibited by the New Jersey Constitution.
Plaintiff's last constitutional argument is that he was deprived of his long-term disability payments without an opportunity to be heard, in violation of his procedural due process rights under the Fourteenth Amendment. Plaintiff does not contend he was deprived of his long-term disability benefits without notice; instead he contends his due process rights were violated because the courts refused to address his argument that N.J.S.A. 40A:14-154 is unconstitutional. Since we now address his contentions, this argument is now moot.

VI
Plaintiff next argues the trial judge erred in including cost of living allowances (COLAs) in the calculation under N.J.S.A. 40A:14-154.
Plaintiff contends that in Brown II, we refused to address defendant's argument that COLAs should be added to plaintiff's PFRS disability pension in determining special compensation because defendant had raised that argument for the first time during the second oral argument in Brown II and had not briefed the issue or raised it below. However, defendant argues that the COLA issue was first addressed by plaintiff during oral argument in Brown II and in response defendant noted that it had filed a declaratory judgment action on that issue in another case.[4] In any event, in our written decision in Brown II, we did not specifically address the COLA issue. Thus, the law-of-the-case doctrine is not implicated here because there is no other lower or equal court decision precluding adjudication of this issue on the basis that defendant failed to *1172 raise it. Lanzet, supra, 126 N.J. at 192, 594 A.2d 1309.
The difficult question remains whether the trial judge erred in including COLAs in the pension offset used to determine special compensation. Plaintiff does not dispute the COLA amounts used by the trial judge, he disputes their application. Plaintiff received a disability pension through PFRS. He is entitled to receive COLAs under the Pension Adjustment Act, N.J.S.A. 43:3B-1 to 43:3B-10. Increases in the annual COLA of retirement allowances are calculated by reference to the consumer price index, thereby protecting a retiree from increased inflation. N.J.S.A. 43:3B-1.
On remand plaintiff argued that the inclusion of COLAs in the pension offset would deprive him of any protection against inflation because his special compensation would be reduced by that amount. The trial judge found that although this was an "appealing argument," the language of N.J.S.A. 40A:14-154 clearly provides that "special compensation plus any pension paid ... shall not exceed the salary payable at the time of the sustaining of the injuries" (emphasis added). The judge found that because the legislature used the term "pension paid" rather than "pension paid at the time of retirement," it intended to include COLAs in the formula.
Moreover, the trial judge found that interpretation was consistent with the intent of N.J.S.A. 40A:14-154, which was to "assure that a disabled officer does not receive more public funds for not working than for working." If COLAs were not considered as part of a retired officer's pension, he or she could earn more by not working than he or she had earned at the time of the injury because COLAs increased the amount of pension paid.
Although there is no specific reference to COLAs in N.J.S.A. 40A:14-154, in addressing the equitable distribution of a pension in a matrimonial case we noted that "post-retirement increases [COLAs] are as much a part of the pension as the amounts initially established by the pension system on retirement and merely adjust the pension payments for the then current real value of the dollar." Hayden v. Hayden, 284 N.J.Super. 418, 423, 665 A.2d 772 (App.Div.1995).
In our view, the trial judge's interpretation is consistent with the express limits of the statute, and then-Governor Driscoll's concern that municipal benefits not exceed the employee's salary at the time of the injury. Consequently, we affirm essentially for the reasons expressed by Judge Quackenboss in his oral decision from the bench on February 25, 1997. We emphasize that we are in complete accord with the judge's comment that while plaintiff makes an appealing argument, he "raises an issue that should be addressed to the legislature and not to a court trying to apply a statute which ... has plain meaning."

VII
Lastly, plaintiff argues that the trial judge erred in denying his motion to amend the complaint to include a claim for a 1983 injury, thereby changing the date from 1981 to 1983 of the injury, and the corresponding salary, which was used to determine the ceiling level for calculation of special compensation. He contends the judge should have taken judicial notice of the worker's compensation award for the injury he sustained in 1983 and granted his motion to amend his complaint.
In plaintiff's initial complaint filed in 1988, he alleged he had been injured in 1981 and as a result "was no longer able to perform" all of his duties. He did not refer to his 1983 injury. After we decided Brown I, plaintiff sought to amend his complaint to include a new party, the PBA, and a new claim under the ADA. However, he did not seek to include his 1983 injury. The trial judge denied plaintiff's motion to amend the complaint. On appeal, we found no abuse of discretion in denying plaintiff's motion to amend his complaint and affirmed that issue. After the remand in Brown II, plaintiff again sought to amend his complaint. For the first time, he alleged that in 1983 he dislocated his right shoulder while in the line of duty and as a result was unable to return to full-duty. He alleged he had received a worker's compensation award dated October 2, 1986 for both the 1981 and the 1983 injury. Thus, plaintiff *1173 sought to use his 1983 salary rather than his 1981 salary for purposes of calculating the ceiling for special compensation benefits.
The trial judge found that plaintiff had consistently referred to the shooting incident in 1981 in his complaint and not the subsequent injury in 1983. Thus, the judge concluded "[i]t is simply too late now after six years of litigation to hold another hearing and allow plaintiff to develop a new theory that his retirement really occurred as a result of some incident in 1983."
Generally, leave of court to file an amended pleading "shall be freely given in the interest of justice." R. 4:9-1. However, "[w]hile motions for leave to amend pleadings are to be liberally granted, they nonetheless are best left to the sound discretion of the trial court in light of the factual situation existing at the time each motion is made." Fisher v. Yates, 270 N.J.Super. 458, 467, 637 A.2d 546 (App.Div.1994). "It is well settled that an exercise of that discretion will be sustained where the trial court refuses to permit new claims and new parties to be added late in the litigation and at a point at which the rights of other parties to a modicum of expedition will be prejudicially affected." Du-Wel Prods., Inc. v. United States Fire Ins. Co., 236 N.J.Super. 349, 364, 565 A.2d 1113 (App.Div.1989), certif. denied, 121 N.J. 617, 583 A.2d 316 (1990).
Here plaintiff filed his initial complaint in 1988, five years after the second injury and two years after the worker's compensation award. He did not move to amend his complaint to allege a second injury until eight years after his initial complaint had been filed. As the trial judge noted plaintiff only referred to his 1981 injury throughout the litigation, and not the 1983 injury. Under these circumstances we find no abuse of discretion in the trial judge's decision to deny defendant's motion to amend the pleadings.
Affirmed.
NOTES
[1] This same formula was used to calculate long term disability benefits for other Township officers.
[2] N.J.S.A. 2A:24-7 provides:" A party to the arbitration may, within 3 months after the award is delivered to him, ... commence a summary action ... for the confirmation of the award or for its vacation, modification or correction."
[3] Plaintiff informed us at oral argument that he gave notice to the Attorney General of his contention that N.J.S.A. 40A:14-154 is unconstitutional and that the Attorney General did not respond. Following oral argument, plaintiff sent us a copy of the notice he mailed to the Attorney General. Because we conclude that N.J.S.A. 40A:14-154 is constitutional we need not determine whether this notice was sufficient to comply with Rule 4:28-4.
[4] Defendant is probably referring to the back-to-back case of Cannon v. Fricks, supra, in which it had sought a declaratory judgment on that basis.