800 A.2d 202

TOWNSHIP OF SOUTH BRUNSWICK, PLAINTIFF–APPELLANT, v.
STATE AGRICULTURE DEVELOPMENT COMMITTEE, STATE
OF NEW JERSEY AND MIDDLESEX COUNTY AGRICULTURE
DEVELOPMENT BOARD, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 26, 2002—Decided June 27, 2002.

362

Before Judges STERN, EICHEN and COLLESTER.

*Elia A. Pelios,* argued the cause for appellant (*Eric Martin Bernstein,* of counsel; *Mr. Pelios,* on the brief).

*Eileen P. Kelly,* argued the cause for respondent State Agriculture Committee (*David Samson,* Attorney General, attorney; *Patrick DeAlmeida,* Deputy Attorney General, of counsel; *Ms. Kelly,* on the brief).

*James L. Lott, Jr.,* argued the cause for intervenor-respondent *New Jersey Turnpike Authority* (*Riker, Danzig, Scherer, Hyland & Perretti,* attorneys; *Stuart M. Lederman,* of counsel and on the brief).

*Whitney A. Curtis,* argued the cause for respondent *Middlesex County Agriculture Development Board* (*Cleary, Alfierei & Grasso,* attorneys; *Douglas Crawford,* of counsel and on the brief).

The opinion of the court was delivered by

COLLESTER, J.A.D.

The Township of South Brunswick (Township) appeals from a final determination of the State Agriculture Development Committee (SADC) certifying a 2700 acre tract of land as an agricultural development area (ADA). The case focus is the conflict between the Township, the Middlesex County Agriculture Development Board (MCADB) and the New Jersey Turnpike Authority (Turnpike) over the exclusion of eighty acres from the 2700 acre tract by the MCADB because that portion was designated by the

Turnpike as proposed Route 92, a 6.7 mile high-speed, limited access superhighway from Interchange 8A of the Turnpike through Middlesex County to Route 1.

On April 4, 2000, the Township adopted its resolution approving approximately 2700 acres in South Brunswick as an ADA. Every parcel was farmland assessed; the area was zoned rural-residential and permitted agricultural use. The MCADB conducted public hearings, during which the Turnpike objected to the inclusion of the eighty acres designated as proposed Route 92. On July 19, 2000, the MCADB voted to approve the tract as an ADA but deleted the eighty acres. On August 16, 2000, the MCADB adopted a resolution reflecting the approval with the deletion and requested the SADC to certify the ADA as amended. After hearing oral argument on September 28, 2000, the SADC certified the amended ADA and declined to consider the excluded portion, stating that it lacked the authority to include areas in a ADA which had not been approved by a county agriculture development board.

Petitioner appeals from the final administrative action of the SADC certifying the ADA, contending that the SADC erred in refusing to consider the excluded eighty acres and in affirming the exclusion by the MCADB since the land met the eligibility criteria for an ADA and its designation as such would not interfere with the Turnpike's proposed highway. The MCADB responds that the Township has no right to appeal the decision of the Board to the SADC and joins with the other defendants[1] in asserting that the certification of its resolution by the SADC was pursuant to the governing statute and neither arbitrary nor unreasonable.

The alignment of proposed Route 92 was adopted in 1995 by the Turnpike commissioners after public hearings. Thereafter, the Turnpike applied for freshwater wetlands and stream encroachment permits in 1996, which resulted in further public hearings

---

[1] We permitted the Turnpike to intervene in the appeal by order of January 29, 2001.

before the New Jersey Department of Environmental Protection (DEP), the United States Environmental Agency (EPA) and the United States Army Corps of Engineers. As of the time of the hearing before the MCADB in this matter, the Turnpike was preparing the environmental impact statement required by the Corps of Engineers.

In 1997 the MCADB passed a resolution urging the EPA and DEP to support and issue necessary permits for the proposed alignment of Route 92 because any alternative alignment would "adversely impact the viability of farming in some of the most productive farmland in the State of New Jersey and cause massive disruption of the agricultur[al] economy of Middlesex County." The MCADB had previously urged the Department of Transportation to adopt the alignment of Route 92 because it "does not adversely impact permanently preserved farmland."

The MCADB and the Turnpike argue that the Township has no direct right of appeal to the SADC for the exclusion of the eighty acres and that therefore this appeal is improper and should be dismissed. They assert that the only proper forum was the Superior Court through an action in lieu of prerogative writs under *R.* 4:69 to challenge the MCADB's recommendation to the SADC. We disagree and hold that the Township can seek review by the SADC of a county board's decision despite the absence of a specific provision in the Agricultural Retention and Development Act (ARDA), *N.J.S.A.* 4:1C–11 to –48.

In enacting the ARDA the legislature found it necessary to establish "county organizations to coordinate the development of farmland preservation programs within identified areas where agriculture will be presumed the first priority use of the land." *N.J.S.A.* 4:1C–12(c). To this end the legislature created county agricultural development boards, *N.J.S.A.* 4:1C–14, which may identify and recommend an area as an ADA if it meets specific criteria. *N.J.S.A.* 4:1C–18. An ADA was defined as that area identified by a county board pursuant to *N.J.S.A.* 4:1C–18 and certified by the SADC after its review of board submissions.

*N.J.S.A.* 4:1C–13(a); *N.J.A.C.* 2:76–1.6(a). The board must submit its resolution minutes and a comprehensive report to the SADC, *N.J.A.C.* 2:76–1.5, and the SADC must find that the board's analysis and criteria are "reasonable and consistent with the provisions of this subchapter." *N.J.A.C.* 2:76–1.6(b). The SADC then presents its findings and recommendations for certification, certification with conditions or denial of certification to the Secretary of Agriculture. *N.J.A.C.* 2:76–1.7.

While the MCADB and the Turnpike correctly note the absence of any specific statutory provision permitting a petitioner to appeal a county board ADA recommendation to the SADC, the statutory and regulatory scheme provide for automatic review by the SADC and by definition an area is not an ADA until the SADC certifies it as such. *N.J.S.A.* 4:1C–13(a). A board recommendation without SADC certification is not valid; it is merely a suggestion or proposal to be reviewed by the SADC.

█ The SADC was established by the Right to Farm Act, *N.J.S.A.* 4:1C–1 to –10, which was enacted at the same time as the ARDA, L.1983, c. 31 and c. 32, and share the same purpose to protect and encourage agriculture. *N.J.S.A.* 4:1C–2 and –12. Statutes which deal with the same subject matter and address the same legislative purpose are to be read *in pari materia. Brown v. Township of Old Bridge,* 319 *N.J.Super.* 476, 498, 725 *A.*2d 1154 (App.Div.), *certif. denied,* 162 *N.J.* 131, 741 *A.*2d 99 (1999). The Right to Farm Act sets forth criteria and procedures for the establishment of ADAs under the ARDA and for farmland preservation programs to be certified by the SADC. *N.J.S.A.* 4:1C–7, – 13(a), –18 and –20. Additionally, the Right to Farm Act sets up the following review procedure:

> Any person aggrieved by any decision of a county board regarding specific agricultural management practices or conflict resolution may appeal the decision to the [SADC] ... The decision of the [SADC] shall be considered a final administrative agency decision.
>
> [*N.J.S.A.* 4:1C–10.2.]

█ The term "conflict resolution" in the statute is unambiguous and sufficiently broad to cover the case at bar. Certainly

there was a conflict between the Township, who wanted the entire 2700 acres designated as an ADA, and the Turnpike, who objected to inclusion of eighty acres which had been designated for a state highway. The MCADB resolved the conflict by deleting the conflicting eighty acres. This was "conflict resolution" within the meaning of *N.J.S.A.* 4:1C–10.2 which provided for review by the SADC.

An action in lieu of prerogative writs is not maintainable "as long as there is available a right of review before an administrative agency," unless "it is manifest that the interest of justice require otherwise." *R.* 4:69–5. In this instance a right of review of the Board's decision was available before the SADC under *N.J.S.A.* 4:1C–10.2 and the certification requirements of *N.J.S.A.* 4:1C–18 and *N.J.A.C.* 2:76–1.6. It would fragment litigation to require a party aggrieved by the decision of a county board to pursue a prerogative writs action in Superior Court when the SADC, an administrative agency, must review the same decision. Therefore, we conclude that the Township properly asserted a right of appeal to the SADC under *N.J.S.A.* 4:1C–10.2.

The Township argues that the SADC is empowered to review the entire decision of a county board and thus may consider omitted parcels and add them to the ADA recommended by the county board. However, the SADC responds that its review power is limited to certification or denial of certification of the ADA as proposed by the county board.

We find no statutory authority for the SADC to add land to a recommended ADA. A county board has statutory discretion to identify and recommend an area as an ADA. The review of the county board's proposal by the SADC is solely to assure that the county board considered all appropriate criteria before approving a particular ADA. The SADC may not substitute the judgment of a county board to reshape, remove or add land to an ADA since the legislature has entrusted the identification of an ADA to the proper county authority.

However, the SADC does have authority to deny certification of an ADA if it concludes that the county board did not properly consider the relevant criteria under *N.J.S.A.* 4:1C–7(a) and (c). Under *N.J.A.C.* 2:76–1.6(b) the SADC must determine that the analysis of relevant criteria by the county board was reasonable as well as consistent with its regulations in order to certify the ADA.

■ The Township argues that the exclusion of the eighty acres by the MCADB was not in accord with statutory criteria because the excluded land was eligible for ADA status as "reasonably free of suburban and conflicting commercial development" under *N.J.S.A.* 4:1C–18(b) since the proposed Route 92 is infrastructure rather than development. The Township also objects to the finding of the MCADB that including the disputed parcels in the ADA would have a negative impact on the ability of the Turnpike to proceed with Route 92. Therefore, the Township takes the position that assuming the SADC could not add the eighty acres into a certified ADA, it should have rejected the application in its entirety and remand it to the MCADB for reconsideration of its decision to exclude that portion of the property from an ADA.

The MCADB responds that the Township's interpretation of *N.J.S.A.* 4:1C–18(b) to distinguish a superhighway as infrastructure rather than "development" under the statute would yield the absurd result of an ADA with the highway passing through it. It further argues that even if the excluded parcels qualified under *N.J.S.A.* 4:1C–18(h), it had the discretion to omit them under *N.J.S.A.* 4:1C–18(d). In its resolution in support of the ADA without the eighty acres the MCADB noted the proposed alignment of Route 92 and made reference to its resolutions of 1987 and 1997 in support as well as a resolution of the Middlesex County Board of Freeholders in favor of the alignment. The MCADB further considered the expense incurred by the Turnpike to proceed with Route 92 in its current alignment. Therefore, it resolved that the eighty acres to which the Turnpike and the county planning director objected failed to meet its eligibility criteria for an ADA.

■ The Turnpike agrees with the MCADB argument because the inclusion of the eighty acres in the ADA would subject it to increased burdens in acquiring the acreage through condemnation. In turn the SADC asserts that the exclusion of the conflicting parcels was not arbitrary or capricious under these circumstances, but was a rational decision based on valid planning considerations.

Our limited scope of review of a final agency action is such that we may not substitute judgment for the expertise of the agency as long as the action is authorized by statute and is not defective because arbitrary or unreasonable. *Williams v. Dept. of Human Servs.*, 116 *N.J.* 102, 107, 561 *A.2d* 244 (1989). In this instance we find that the actions of the county Board as well as the SADC were authorized by statute and neither arbitrary nor unreasonable.

Under *N.J.S.A.* 4:1C–18,

The board may, after public hearing, identify and recommend an area as an [ADA] ... [t]he board shall document where agricultural shall be the preferred, but not necessarily the exclusive, use of land if that area:

 a. Encompasses productive agricultural lands which are currently in production or have a strong potential for future production in agriculture and in which agriculture is a permitted use ...

 b. Is reasonably free of suburban and conflicting commercial development;

 c. Comprises not greater than 90% of the agricultural land mass of the county;

 d. Incorporates any other characteristics deemed appropriate by the board.

The reasons given by the MCADB for excluding the eighty acres was to eliminate conflict with a proposed State superhighway. We find that this was an appropriate eligibility criterion for exclusion. A county board may incorporate appropriate characteristics other than those specifically listed in the statute into its ADA eligibility requirements. *N.J.S.A.* 4:1C–18d. Absence of conflict with a proposed superhighway is a reasonable and appropriate criterion. Therefore, even accepting the Township's argument the proposed superhighway is not "commercial development" under *N.J.S.A.* 4:1C–18b, the conflicting parcels would still be ineligible under the county's appropriate criteria. Furthermore, *N.J.A.C.* 2:76–1.4 includes as factors for consideration by a county

board for identification of an ADA the "compatibility with comprehensive and special purpose county and state plans." The MCADB was entitled to anticipate that the Turnpike could obtain approval for Route 92 as part of a state plan under *N.J.S.A.* 27:23–23.8.

Finally, the Township argues that Route 92 has been in the planning stages "for decades," that "not a shovel of dirt has been moved," and that the superhighway or its alignment may never be approved. However, while applications for approvals are pending, they are "anticipated" under *N.J.A.C.* 2:76–1.4(a)4, and the proposed Route 92 is a State plan under *N.J.S.A.* 27:23–23.8 and *N.J.A.C.* 2:76–1.4(a)4 and 6. A county board must consider these factors in establishing its criteria in accordance with *N.J.A.C.* 2:76–1.4(a)4, and they are appropriate characteristics to incorporate into the criteria of *N.J.S.A.* 4:1C–18d.

We find that the actions of the SADC were authorized by statute and were neither arbitrary nor unreasonable. Accordingly, we affirm.