**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4333-14T1

NEW JERSEY TURNPIKE AUTHORITY,

    Plaintiff-Appellant,

v.

TOWNSHIP OF MONROE,

    Defendant-Respondent.

_____

          Argued February 15, 2017 — Decided September 18, 2017

          Before Judges Fuentes, Simonelli and Carroll.

          On appeal from the Tax Court of New Jersey,
          Docket No. 017197-2011, whose opinion is
          reported at 28 N.J. Tax 158 (Tax 2014).

          John F. Casey argued the cause for appellant
          (Chiesa Shahinian & Giantomasi PC, attorneys;
          Mr. Casey, on the briefs).

          Gregory B. Pasquale argued the cause for
          respondent (Shain, Schaffer & Rafanello, PC,
          attorneys; Richard A. Rafanello and Mr.
          Pasquale, on the brief).

PER CURIAM

    Plaintiff, the New Jersey Turnpike Authority, appeals from

the summary judgment decision of the Tax Court that determined it

did not qualify for a roll-back tax exemption reserved for local and state government units under N.J.S.A. 54:4-23.8. Defendant, Township of Monroe, sought roll-back taxes from plaintiff's land purchase. Both plaintiff and defendant moved for summary judgment on the roll-back tax issue. The Tax Court held plaintiff was not "the State," denied plaintiff's motion, granted defendant's motion, and dismissed plaintiff's case with prejudice. The court's opinion is published in the Tax Court Reports. N.J. Tpk. Auth. v. Twp. of Monroe, 28 N.J. Tax 143 (Tax Ct. 2014). The Turnpike Authority argues Judge Mala Sundar erred because the Turnpike qualifies under the statute as the alter ego of the "the State" for tax exemption purposes. We affirm.

I

The New Jersey Legislature established the Turnpike Authority in the New Jersey Department of Transportation. N.J.S.A. 27:23-3(A). Plaintiff is an "instrumentality, exercising public and essential governmental functions." Ibid. Its primary purpose is "to provide for the acquisition and construction of modern express highways" and "to acquire, construct, maintain, improve, manage, repair and operate transportation projects." N.J.S.A. 27:23-1. To assist plaintiff with this purpose, the Legislature exempted plaintiff from "pay[ing] any taxes or assessments upon any transportation project or any property acquired or used by

[plaintiff] under the provisions of this [A]ct[.]" N.J.S.A. 27:23-12.

The Turnpike Authority is both subordinate to and separate from the State. The Governor appoints the majority of the Turnpike Authority's Board of Commissioners and designates the Chairman and Vice Chairman, who serve at the Governor's pleasure. N.J.S.A. 27:23-3(B)-(C). The Turnpike Authority: (1) must pay its own debts, N.J.S.A. 27:23-2; (2) can "borrow money and issue negotiable bonds for any of its corporate purposes," N.J.S.A. 27:23-5(f); (3) can "sue and be sued in its own name[,]" N.J.S.A. 27:23-5(d), (4) can contract with private, local, State and federal entities, N.J.S.A. 27:23-5(l); and (5) "can acquire in the name of [plaintiff,] by purchase or otherwise . . . any land and other property, which it may determine is reasonably necessary[,]" N.J.S.A. 27:23-5(j).

Several years ago, plaintiff began a project to widen and reconfigure a portion of the highway that ran from interchange six to interchange nine. Toward that end, it sought permits from the New Jersey Department of Environmental Protection (DEP) because its project affected nearby protected freshwater wetlands. In 2009 and 2010, the DEP granted plaintiff a five-year permit that allowed it to disturb approximately 119 acres, and a ten-year

permit, authorizing plaintiff to temporarily and permanently disturb grassed, herbaceous, and forested riparian areas.

In exchange for the permits, the DEP required plaintiff to mitigate the permanent and temporary harm it would cause to protected wetlands and forested riparian zones, among others. Plaintiff fulfilled its duty to mitigate by buying the Brookland Mitigation Site (hereinafter the "site") for approximately four million dollars and offering the site as a donation to the DEP. The purchase deed, which was recorded in the Middlesex County Clerk's Office on February 23, 2010, noted that the "conveyance" to plaintiff was made "in lieu of condemnation." Nobody paid a realty tax transfer for the transaction because plaintiff, an "instrumentality of the State," initially received the property.

The purchased site comprises approximately 397.47 acres, but does not include any Preserved Farmland or Green Acres properties. In April 2009, plaintiff's land appraiser prepared a report, claiming the site was "vacant residential land" with a market value of $2.45 million. During tax year 2010, defendant Township of Monroe assessed the site as farmland that qualified under the Farmland Assessment Act of 1964 (hereinafter the "FA-Act"), N.J.S.A. 54:4-23.1 to -34. After plaintiff bought the site, defendant's assessor filed a complaint with the Middlesex County

Board of Taxation to impose roll-back taxes on the site for tax years 2008 through 2010.

Despite their conflict, neither plaintiff nor defendant claims the site was used for agricultural, horticultural, tree production, or woodland management purposes once plaintiff purchased it in 2010. On September 15, 2011, the Middlesex County Board of Taxation granted defendant's roll-back tax applications. Plaintiff timely appealed the decision to the Tax Court, which ultimately ruled in favor of defendant on summary judgment.

II

This dispute began when the Township of Monroe appealed to the Middlesex County Tax Board seeking roll-back taxes from the Turnpike's purchase of land to mitigate the environmental impact caused by a construction project to widen and reconfigure a portion of the highway that ran from interchange six to interchange nine. The DEP authorized the project conditioned upon the Turnpike acquiring sufficient land to mitigate the permanent and temporary harm it would cause to protected wetlands and forested riparian zones, among others.

Both N.J. Const. art. VIII, § 1, ¶ 1, and N.J.S.A. 54:4-23.8, provide:

> When land which is in agricultural or horticultural use and is being valued, assessed and taxed under the provisions of P.L. 1964, c. 48 (C.54:4-23.1 et seq), is applied to a use other than agricultural or horticultural, it shall be subject to additional taxes, hereinafter referred to as roll-back taxes, in an amount equal to the difference, if any, between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had the land been valued, assessed and taxed as other land in the taxing district, in the current tax year (the year of change in use) and in such of the two tax years immediately preceding, in which the land was valued, assessed and taxed herein provided.

[Emphasis added.]

The FA-Act regulations mirror the Constitution and statute for the roll-back taxes. The regulations provide: "When land that is in agricultural or horticultural use and is being assessed under the Act is applied to a use other than agricultural or horticultural, . . . it is subject to additional taxes, referred to as roll-back taxes." N.J.A.C. 18:15-7.1. (Emphasis added). Further, "[l]and acquired by the State[] [or] a local government unit . . . for recreation and conservation purposes will not be subject to roll-back taxes." N.J.A.C. 18:15-7.2(b). The relevant time period here is 2008-2010.

As framed by Judge Sundar, the Turnpike Authority "argues that it meets all the three requirements of N.J.S.A. 54:4-23.8 for

a roll-back tax exemption because (i) it is a 'local government unit,' (ii) which acquired property, (iii) for 'conservation and recreation' purposes." New Jersey Turnpike Authority v. Tp. of Monroe, supra, 28 N.J. Tax at 144. Judge Sundar held the Turnpike Authority was not a "local government unit" as defined in N.J.S.A. 13:8C-3.

An appellate court accords a highly deferential standard of review to tax court decisions. Brown v. Borough of Glen Rock, 19 N.J. Tax 366, 375 (App. Div.), certif. denied, 168 N.J. 291 (2001). An appellate court will not disturb a tax court's findings "unless they are plainly arbitrary or there is a lack of substantial evidence to support them" because "[t]he judges presiding in the Tax Court have special expertise." Glenpointe Assoc. v. Twp. of Teaneck, 241 N.J. Super. 37, 46 (App. Div.), certif. denied, 122 N.J. 391 (1990). See Ford Motor Co. v. Twp. of Edison, 12 N.J. Tax 244, 247 (App. Div. 1990) (applying a substantial-evidence standard of review to a tax court decision), aff'd, 127 N.J. 290 (1992).

Although an appellate court defers to a tax court's valuation decisions, it will review de novo a tax court's legal decisions. Toll Bros. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002). See Manalapan Realty v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (stating a "trial court's interpretation of the

law and the legal consequences that flow from established facts are not entitled to any special deference"). Even on de novo review, Judge Sundar properly interpreted "the State" under N.J.S.A. 54:4-23.8 to exclude plaintiff because her holding accords with: (1) the relevant case law and (2) the roll-back exemption's history. In this light, we discern no legal basis to disagree with Judge Sundar's well-reasoned opinion. We add only the following brief comments.

It is well-settled that courts should consider together "[s]tatutes which deal with the same subject matter and address the same legislative purpose[.]" Twp. of S. Brunswick v. State Agric. Dev. Comm., 352 N.J. Super. 361, 365 (App. Div. 2002) (citing Brown v. Twp. of Old Bridge, 319 N.J. Super. 476, 498 (App. Div.), certif. denied, 162 N.J. 131 (1999)). This rule of statutory construction "most obviously applies when the statutes in question were enacted during the same session or went into effect at the same time, . . . or where they make specific reference to one another[.]" Brown, supra, 319 N.J. Super. at 498 (citing Mimkon v. Ford, 66 N.J. 426, 433 (1975)). It "derives from the reasonable presumption that legislators are aware of relevant prior legislation." Id.

N.J.S.A. 54:4-23.8 must be analyzed in conjunction with the Garden State Preservations Trust (GSPTA) because: (1) the

Legislature both amended N.J.S.A. 54:4-23.8 and passed the GSPTA pursuant to P.L. 1999, c. 152; (2) N.J.S.A. 54:4-23.8 expressly incorporates by reference the GSPTA's definitions provision, N.J.S.A. 13:8C-3; and (3) both statutes deal with roll-back tax exemptions. N.J.S.A. 54:4-23.8; N.J.S.A. 13:8C-29 (citing N.J.S.A. 54:4-3.6).

In 1999, the Legislature passed the GSPTA to "acqui[re] and preserv[e] [] open space, farmland, and historic properties in New Jersey[.]" N.J.S.A. 13:8C-2. The GSPTA created a Trust, "a public body corporate and politic" located "in but not of the Department of the Treasury[,]" to issue bonds that would help fund land preservation. N.J.S.A. 13:8C-4a; N.J.S.A. 13:8C-7(a). The Trust partially or fully funds "projects undertaken" by the DEP and "grant or loan recipients." N.J.S.A. 13:8C-5(a). These projects include "all things deemed necessary or useful and convenient in connection with the acquisition or development of lands for recreation and conservation purposes, the acquisition of development easements or fee simple titles to farmland, or the preservation of historic properties, as the case may be." N.J.S.A. 13:8C-3.

When the State or a qualifying tax-exempt non-profit organization acquires lands "in fee simple for recreation and conservation purposes that become certified exempt from property

taxes" under the GSPTA or other similar laws, the State must pay the municipalities a fee in lieu of taxes because "municipalities may not suffer a loss of taxes" from the land acquisition. N.J.S.A. 13:8C-29a(1)(a). See also N.J.S.A. 13:8C-30a (stating same for non-constitutionally dedicated money). "[L]ands owned in fee simple by the State for recreation and conservation purposes" refer to "State parks and forests . . . State wildlife management areas, and any other lands owned in fee simple by the State and administered by the [DEP] for recreation and conservation purposes." N.J.S.A. 13:8C-29(e); N.J.S.A. 13:8C-30(e).

Here, plaintiff purchased farmland located in the Township of Monroe to satisfy its mitigation obligations, but failed to pay roll-back taxes when it gave the land to the DEP. The GSPTA's compensation provision does not let plaintiff use tax exemptions reserved for "the State" under the GSPTA or N.J.S.A. 54:4-23.8 because plaintiff cannot force New Jersey to pay a fee in lieu of taxes, a necessary condition for using the roll-back tax exemption. The Legislature expressly required that plaintiff pay its own debts when it prevented plaintiff from "incur[ring] indebtedness or liability on behalf of or payable by the State or any political subdivision thereof." N.J.S.A. 27:23-2. If plaintiff cannot compel the State to pay the fee in lieu of taxes, it is highly

10

improbable that it qualifies for a roll-back tax exemption reserved for "the State."

If the Legislature intended to include plaintiff within the definition of "the State" under N.J.S.A. 54:4-23.8, it could have done so when it amended the FA-Act in 1999. The Legislature constructively knew that this court and our Supreme Court did not view plaintiff as "the State" for tax exemption or other purposes, but it did not identify plaintiff as "the State." See Johnson v. Scaccetti, 192 N.J. 256, 276 (2007) (quoting DiProspero v. Penn, 183 N.J. 477 (2005)) (stating "the Legislature 'is presumed to be aware of judicial construction of its enactments.'"). Thus, we may infer that the Legislature did not expand the definition to include plaintiff when it amended the statute in 1999. See Quaremba v. Allan, 67 N.J. 1, 14 (1975) (quoting In re Keogh-Dwyer, 45 N.J. 117, 120 (1965)) (stating that the "'continued use of the same language or [a] failure to amend the statute[] is evidence that [a judicial] construction is in accord with the legislative intent'").

We thus affirm Judge Sundar's order granting summary judgment in favor of the Township of Monroe.[1]

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[1] We need not consider if plaintiff meets the definition of a "local government unit" under N.J.S.A. 54:4-23.8 and qualifies for a roll-back tax exemption because plaintiff failed to address or brief these issues on appeal. See N.J. Dep't of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 505-06 n.2 (App. Div.), certif. denied, 222 N.J. 17 (2015).