**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0687-18T2

IN THE MATTER OF
MICHAEL PICOZZI SADC
ID# 14-0090-EP/14-0131-EP.

_____

Argued telephonically April 20, 2020 –
Decided May 6, 2020

Before Judges Sabatino, Geiger and Natali.

On appeal from the New Jersey Department of Agriculture Development Committee.

Timothy A. Valliere argued the cause for appellant Michael Picozzi.

Stephanie R. Carney, Deputy Attorney General, argued the cause for respondent Department of Agriculture Development Committee (Gurbir S. Grewal, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Stephanie R. Carney and Jason T. Stypinski, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Michael Picozzi appeals from an August 30, 2018 notice of

violation by the State Agriculture Development Committee (SADC).  In a July

26, 2018 Resolution, the SADC concluded that appellant violated five paragraphs of a development easement (Easement) held by the Morris County Agriculture Development Board (MCADB) that restricted non-agricultural development and uses on the preserved portion of his property. We affirm in part and reverse in part.

I.

In 2005, appellant purchased approximately sixteen acres of property in Harding Township. Prior to appellant's purchase, Harding Township, with aid from an SADC grant, obtained the development rights to a ten-acre portion of the property from the previous owners for $2,351,034.00, permanently preserving and encumbering that portion of the property with a farmland preservation easement. The terms of the Easement principally tracked the language set forth in N.J.A.C. 2:76-6.15, which generally restricts non-agricultural development in order to maintain and enhance the agricultural industry in the State. MCADB is the holder of the Easement with the SADC and Morris County jointly retaining the right to enforce its provisions.

On October 14, 2015, appellant submitted a zoning application to Harding Township for the "construction of a barn for agricultural purposes." Harding Township approved appellant's application and allowed construction of an

"agricultural building" based on appellant's representation that "the steel building [he was] proposing to build will be used only for agricultural purposes." When the MCADB asked appellant for additional information regarding use of the barn, he explained that "the proposed use [of the barn] is for hay farming" and further elaborated that "whether it is hay farming (as currently done) or dairy farming or pig farming, which [he was] also considering" the purpose of the barn was to "support that agricultural production." Appellant began construction in the spring of 2016 and completed construction sometime in the fall.

Prior to completion of the barn, the MCADB provided appellant with a report titled "Interpreting the Provisions of the Deed of Easement, Report No. 2: Recreational Uses" (Report). According to the Report, in response to increasing requests to use portions of preserved farms for recreational activities, the SADC sought to "clarify what the SADC believes are the relevant considerations in determining which recreational activities may be permitted on preserved farms under the deed of easement, and existing applicable statutes and regulations." The SADC emphasized that in accordance with the Agriculture Retention and Development Act (ARDA), agricultural production must be the first priority use of the premises. It noted that "first priority use means there is no activity on the premises that restricts or inhibits the potential to utilize the

3

entirety of the premises for all types of agricultural production at the present time or in the future." Stated differently, the SADC explained that "when a landowner affirmatively or effectively 'dedicates' any portion of the preserved farm to a recreational use, the SADC believes that violates the principle that agriculture is to be the first priority use of the land."

The Report also discussed paragraph nine of the Easement, which states that a landowner may "derive income from certain activities" provided those uses do not "do not interfere with the actual use of the land for agricultural production" and utilize the property "in its existing condition." With respect to such non-agricultural uses, the Report stated that "not all recreational uses are intended to be permitted[,]" "recreational uses cannot 'limit' the type of agricultural production that can take place on the farm currently or in the future[,]" there can be "no improvements made to the premises to accommodate the recreational use[,]" and "there cannot be intentional agricultural inactivity to accommodate the recreational use." Further, with respect to athletic fields and golf courses, the Report noted that "the intent of [paragraph nine] was to not allow preserved farms to be used for sporting events and other organized recreational activities more suited to public parks and playgrounds . . . [as those

activities] are more likely to result in a landowner's dedication of all or part of the land for a recreational use and its ancillary needs."

On October 27, 2016, a Harding Township zoning officer inspected appellant's newly constructed barn and determined that "the use of the structure [was] not strictly agricultural." The zoning official's photographs taken during the inspection showed "hockey rink boards with plexi[]glass, [a] batting cage, hockey goal, hockey sticks and pucks, as well as an artificial skating surface." The MCADB also learned of the alleged hockey rink inside the barn soon thereafter.

The MCADB issued a December 14, 2016 notice of violation to appellant specifying that the hockey rink constituted a non-agricultural use on the property and violated the Easement. According to photographs in the record, appellant subsequently removed all hockey-related items from the barn including the hockey boards, goal, sticks, pucks, and the skating surface prior to MCADB conducting a January 25, 2017 follow-up inspection. MCADB accordingly issued a notice of compliance to appellant on March 1, 2017.

MCADB re-inspected the property on December 21, 2017 and observed that appellant reinstalled the hockey rink and equipment, including the plexiglass-topped hockey boards bolted to the concrete floor and an ice surface,

that were the subject of the original notice of violation. In response, the MCADB issued another notice of violation providing him thirty days "to remove the hockey rink, ice surface[,] and hockey-related items from the barn." On a January 26, 2018 follow-up inspection, however, the MCADB noted that appellant's barn still contained the hockey rink which was now covered by astro-turf, the chillers used to cool the temperature of the floor for ice, and the hockey equipment.

At an April 12, 2018 public meeting, the MCADB found that appellant violated paragraphs one, two, nine, and fourteen of the Easement, and it referred the matter to Harding Township and SADC for investigation and enforcement. The SADC inspected appellant's property on July 6, 2018 and observed "hockey boards and other hockey-related items remaining inside the barn," it noted that "the floor of the skating area was wet, but not ice," and "identified a raised platform overlooking the skating floor with what appeared to be an enclosed practice/training area and steel framework for a skating treadmill." With respect to farm equipment, the inspectors noticed "a small tractor, log splitter, small tractor-mounted spreader, lawnmower and all-terrain vehicle."

The SADC considered the matter at a July 26, 2018 public meeting. Despite the SADC's verbal and written notice of the meeting to appellant, as

well as mailed and faxed notice to the Newark Star Ledger, Times of Trenton, and Camden Courier Post, appellant failed to attend.

During the meeting, MCADB Administrator Katherine Coyle submitted the Board's findings and photographs as a result of the four inspections of appellant's property. She also included photographs received directly from appellant depicting the hockey rink with boards bolted to the ground and related hockey equipment. An SADC manager also spoke at the meeting to describe his observations of appellant's property during his July 6, 2018 inspection. He noted that he saw the hockey rink and related items, but that the floor was not frozen as appellant informed him that the chiller system was not working correctly. The SADC manager further noted that there was no hay or farm products stored in the barn at the time of the inspection.

In its accompanying July 26, 2018 Resolution, the SADC determined, based on the statements, photographic evidence, and other documents before it, that appellant failed to comply with paragraphs one, two, three, nine and fourteen of the Easement. It also authorized the Attorney General to institute legal action.

The SADC explained that paragraph one of the Easement provided that "[a]ny development of the [p]remises for non[-]agricultural purposes is

expressly prohibited," and appellant's "[d]evelopment of the farm for purposes of ice skating and/or athletic facility purposes . . . is . . . prohibited." Further, paragraph two stated that the encumbered property was limited to "agricultural use[1] and production in compliance with N.J.S.A. 4:1C-11 . . . and all other rules promulgated by the [SADC]" and "[t]he conversion of preserved land to a structure which does not service an agricultural use renders the land no longer available for agricultural use or production [and] is therefore prohibited."

The SADC also relied on paragraph three of the Easement and noted that the original grantor of the Easement certified that "at the time of [its] execution[,] . . . the non[-]agricultural uses indicated on attached Schedule (B) existed . . . [and] [a]ll other non[-]agricultural uses are prohibited . . . ." The SADC concluded that "[n]o non[]agricultural uses existed at the time of preservation [,] . . . none are listed in Schedule (B)," and appellant's "[u]se of

---

[1] Paragraph two defines agricultural use as:

> the use of the [property] for common farmsite activities including, but not limited to: production, harvesting, storage, grading, packaging, processing and the wholesale and retail marketing of crops, plants, animals and other related commodities and the use and application of techniques and methods of soil preparation and management, fertilization, weed, disease and pest control, disposal of farm waste, irrigation, drainage and water management and grazing.

the farm for the construction of an ice skating rink/athletic facility constitutes a non[-]agricultural use . . . which was not in existence at the time of the conveyance of the easement, and is therefore prohibited."

Additionally, the SADC noted that paragraph nine of the Easement permitted appellant to "use the [property] to derive income from certain recreational activities . . . only if such activities do not interfere with the actual use of the land for agricultural production and that the activities only utilize the [property] in its existing condition." It further provided that "[o]ther recreational activities from which income is derived and which alter the [property], such as golf courses and athletic fields, are prohibited." The SADC found that appellant's "ice skating rink/athletic facility complete with optional ice or artificial turf floor, hockey boards[,] and training infrastructure does not utilize the [property] in its existing condition, does interfere with use of the area for agricultural production, does alter the land to create an athletic field and is therefore prohibited."

Finally, the SADC explained in the July 26, 2018 Resolution that paragraph fourteen of the Easement provided that appellant "may construct any new buildings for agricultural purposes[,]" but that his "[i]ce skating and/or

athletic facility uses are not considered an agricultural purpose and therefore construction of a building for these activities is prohibited."

The SADC issued a formal notice of violation on August 30, 2018, which appended the July 26, 2018 Resolution. This appeal followed.

## II.

Our review of a final agency decision is limited, and we "do not ordinarily overturn such a decision 'in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence.'" In re Carter, 191 N.J. 474, 482 (2007) (citations omitted). Further, we may not substitute our judgment for that of the agency's when "substantial credible evidence supports [the] agency's conclusion . . . ." Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992) (citations omitted). Instead, we "defer to an agency's expertise and superior knowledge of a particular field." Ibid. (citations omitted). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Adoption of Amendments to Ne., Upper Raritan, Sussex Cty., 435 N.J. Super. 571, 582 (App. Div. 2014) (alteration in original) (quoting In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006)).

"While we must defer to the agency's expertise, we need not surrender to it." N.J. Chapter of Nat'l. Ass'n of Indus. and Office Parks v. N.J. Dep't of Envt'l Prot., 241 N.J. Super. 145, 165 (App. Div. 1990).  An appellate court therefore does not automatically accept an agency's interpretation of a statute or a regulation, and reviews strictly legal questions de novo.  Bowser v. Bd. of Trs., Police & Fireman's Ret. Sys., 455 N.J. Super. 165, 170-71 (App. Div. 2018).

On appeal, appellant maintains that the SADC's July 26, 2018 Resolution is entitled to no deference because it "ignores the actual use of the barn for agricultural purposes," "relies on labelling the barn as an ice skating/athletic training facility to justify the purported violations of the . . . Easement," and "does not discuss how any feature of the barn . . . interferes, restricts, inhibits or precludes the agricultural use of the barn."

The Right to Farm Act (RTFA) embodies the public policy that "[t]he retention of agricultural activities would serve the best interest of all citizens of this State by insuring the numerous social, economic and environmental benefits which accrue from one of the largest industries in the Garden State."  N.J.S.A. 4:1C-2(a).  To effectuate these objectives, the Legislature determined it was "necessary to authorize the establishment of State and county organizations to coordinate the development of farmland preservation programs within identified

areas where . . . certain financial, administrative and regulatory benefits will be made available to those landowners who choose to participate." N.J.S.A. 4:1C-12(c).

The SADC, created by the RTFA, "share[s] the same purpose to protect and encourage agriculture[,]" Twp. of S. Brunswick v. SADC, 352 N.J. Super. 361, 365 (App. Div. 2002) (citing N.J.S.A. 4:1C-2 and -12), and ensures "the State's regulatory action with respect to agricultural activities may be undertaken with a more complete understanding of the needs and difficulties of agriculture," N.J.S.A. 4:1C-4(a). See also In re Agric., Aquacultural, & Horticultural Water Usage Certification Rules, 410 N.J. Super. 209, 227 (App. Div. 2009).

The SADC is empowered to "[e]stablish guidelines . . . for identification of agricultural lands suitable for inclusion in agricultural development areas and farmland preservation programs[,]" and to "[r]eview and approve, conditionally approve or disapprove all applications for funds." N.J.S.A. 4:1C-7(a), (e). The SADC also has specific authority to "[a]pply for, receive, and accept . . . grants or loans for, or in aid of, the committee's authorized purposes;" to "[e]nter into any agreement or contract . . . necessary, convenient, or desirable . . . to carry out [its] power . . . ;" and to "[a]dopt, pursuant to the 'Administrative Procedure

12

Act,' [N.J.S.A. 52:14B-1 to -30], rules and regulations necessary to implement the [RTFA's] provisions." N.J.S.A. 4:1C-5(d), (e), and (f).

The statutory scheme specifically envisions the purchase of farmland development easements requiring land to be dedicated to agricultural purposes. See N.J.S.A. 4:1C-24(a)(2) ("Any landowner whose land is within a municipally approved program or other farmland preservation program . . . , and which is included in an agricultural development area, may enter into an agreement to convey a development easement on the land to the board."). In interpreting provisions of those development easements, the regulation itself requires that "the deed restrictions . . . be liberally construed" to further the 1981 Farmland Preservation Bond Act and ARDA. N.J.A.C. 2:76-6.15(c).

When the SADC's July 28, 2018 Resolution and attendant notice of violation are considered against these legal principles, it is clear that its determinations that appellant violated paragraphs one, two, three, and fourteen of the Easement were fully supported by substantial, credible evidence in the record, consistent with the aforementioned statutes, and were therefore neither arbitrary nor capricious. We reach a different conclusion, however, with respect

to paragraph nine.[2] While paragraph nine is illustrative of the types of permissible and proscribed recreational activities (e.g., golf courses and athletic fields), there was no evidence before the SADC that appellant derived any income from the use of the hockey rink or related activities. SADC's erroneous finding as to paragraph nine, however, does not alter our determination that appellant's conduct violated paragraphs one, two, three, and fourteen of the Easement.

With respect to paragraphs one and two of the Easement, which require that the encumbered portion of appellant's property be maintained for agricultural use and proscribing non-agricultural uses, the SADC did not abuse its discretion in determining that appellant breached these provision when he used his barn to create a hockey rink. Neither ice skating nor hockey are agricultural uses.

The evidence before the SADC clearly established that appellant's use of the barn also violated paragraph three of the Easement. As the SADC

---

[2] As noted, that provision of the Easement permits "use [of] the [property] to derive income from certain recreational activities . . . only if such activities do not interfere with the actual use of the land for agricultural production and that the activities only utilize the [property] in its existing condition" and prohibits other activities "from which income is derived and which alter the [property], such as golf courses and athletic fields." (Emphasis added).

concluded, "[n]o non-agricultural uses existed at the time of preservation." Appellant has not identified anything in the record to dispute this finding. By constructing a hockey rink in the barn, he commenced a non-agricultural use that did not exist at the time of preservation.

Finally, appellant's construction of a barn that covered a functioning ice-hockey rink violated paragraph fourteen of the Easement as the SADC found. Under paragraph fourteen appellant was permitted to engage in new construction on the property for agricultural purposes. We are satisfied that the evidence before the SADC supported its conclusion that appellant's use of the barn was not for such a permitted purpose.

We disagree with appellant's argument that the MCADB's and SADC's decision was arbitrary and capricious because they "focused on the look and potential use of the barn rather than its actual use," as he "purchased over $70,000 of farm equipment . . . and stores that equipment in the barn." Appellant ignores the substantial evidence in the record before the SADC that he used his newly constructed facility not "to support . . . agricultural production," but clearly to house an ice skating rink and to support hockey-related activities. That conclusion by the SADC was based on the statements provided to it by the inspector based upon his numerous observations of the interior of the barn, as

15

well as the photographs appellant himself provided evidencing that the interior of the barn included, at a minimum, an oval-shaped hockey rink with hockey boards bolted to the concrete floor containing plexiglass barriers, a hockey goal, hockey sticks and pucks, and most significantly an ice-covered floor. That appellant intermittently (based on the photographs submitted to the SADC) parked certain equipment on top of an ice floor covered by astro-turf does not refute the conclusion that he violated multiple paragraphs of the Easement when he principally used the barn for "non[-]agricultural purposes" in violation of paragraph one, did not use the barn "for common farmsite activities" in violation of paragraph two, and did not "construct [a] new building[] for agricultural purposes," in violation of paragraph fourteen as found by the SADC.

The SADC was clearly unpersuaded by appellant's explanation that his bolted down circular rink with plexiglass extenders was related to farming activities or to protect his workers or the barn structure. Nor was it convinced that appellant's installation of multiple chillers attached to the barn were for controlling temperature for agricultural purposes, particularly when the photographs clearly showed ice on the floor. Indeed, appellant does not dispute that there was an ice floor in the barn, and he provided no logical explanation

16

for its existence or evidence that those chillers related to any current (e.g., hay production) or future farming activities (e.g., dairy or pig farming).

Appellant also argues that "the [SADC] does not . . . explain how any feature or décor of the barn interferes, restricts, inhibits or prohibits the agricultural use of the barn." More specifically, appellant emphasizes that the SADC "fails to describe how an ambient cooling system restricts or inhibits farming[,]" "how the use of second-hand hockey boards . . . restrict or inhibit farming[,]" or why he "cannot configure the interior partitions in his barn in an oval configuration if he deems it appropriate to protect the walls of the barn and to ensure the safety of those working in the barn."

There is no dispute that appellant is permitted to utilize the barn for agricultural activities, install a cooling system to manage the temperature inside the barn for permitted agricultural purposes, and support the barn's structure. Indeed, once he removed the offending items from the barn, the MCADB issued its March 1, 2017 notice of compliance after confirming he remedied the violations. When examining the totality of the circumstances, however, including the testimony, photographs, and the fact that appellant reinstalled all of the hockey-related equipment again after he was given the notice of compliance, it is evident that appellant intended to use the facility for non[-]

agricultural purposes and the SADC did not abuse its discretion in so concluding.

Appellant also contends that the SADC's resolution provides no guidance for compliance as it "provides no guidance in terms of the type of flooring that it would deem acceptable[,]" "whether another configuration of the second-hand hockey boards would be acceptable[,] or whether an oval configuration of some other type of partition would be acceptable." Relying on Boller Beverages, Inc. v. Davis, 38 N.J. 138, 152 (1962), appellant argues that he "is entitled to know the [a]gency standards and to have adequate direction from the [a]gency about any constraints on the use of his barn." Appellant's arguments, and his reliance on Boller, is misplaced.

It is abundantly clear from the administrative record that appellant had sufficient information, both from the clear terms of the Easement and the Report, to determine that his installation of a frozen hockey rink violated the terms of his Easement. Any reasonable reading of the Easement leads to one inescapable conclusion — appellant is not permitted to build a hockey rink on the encumbered portion of his property and cover it with a barn. It was not an abuse of the SADC's discretion for it to effectively conclude that appellant's storing a

few pieces of equipment intermittently on top of a hockey rink does not comply with the clear terms of the Easement.

Nor do we agree with appellant's contention that "there is a lack of evidence that any feature or décor of the barn inhibits, restricts, precludes or prevents the use of the barn for agricultural purposes" and thus "the SADC resolution should be vacated and the matter remanded for a trial-type hearing." First, the SADC's decision was not based on the décor of the barn but its clear primary use as a hockey rink. There is nothing in the Easement that prohibits appellant from decorating the interior of the barn with hockey banners and related paraphernalia and nothing in the July 26, 2018 ordinance or the Easement can reasonably be interpreted as precluding such decorations.

Finally, we disagree with appellant that the matter should be remanded so he can belatedly "cross-examine the various witnesses upon whom the SADC, and [MCADB], relie[d]" including a witness who he alleges "had a personal agenda by offering to purchase the barn from [him]," another "who [he] heard had said the barn would be torn down in her lifetime," and an inspector regarding "comments he made to [him] during a site visit as well as the internet 'research' he did as part of his presentation during the SADC meeting."

19

Appellant was provided ample notice of the meeting and elected not to attend. Under such circumstances, it would be patently unfair for appellant to ignore a duly noticed hearing only to request on appeal the opportunity to participate. In any event, we find no substantive support for appellant's request. The facts supporting the SADC's determination were primarily based on ample and undisputed photographic evidence in the record (some provided by appellant himself).

We stress that our opinion is limited to those portions of the Easement which we have concluded appellant violated based on the evidence before the SADC. We do not determine that appellant's construction of the barn violated any paragraph of the Easement as the SADC did not make that general finding or reach such a legal conclusion. Likewise, the SADC did not conclude that appellant's installation of the chillers violated any paragraph of the Easement, per se. Rather, it was appellant's use of the chillers to support a frozen hockey rink as opposed to an agricultural use, as the evidence amply supported, that was in contravention of the Easement. Simply put, future uses of the barn and related equipment must merely comply with an agricultural use as clearly stated in the Easement.

A-0687-18T2

In sum, we affirm the SADC's decision determining that appellant violated paragraphs one, two, three and fourteen of the development easement. We reverse the SADC's determination that appellant violated paragraph nine of the development easement.

To the extent we have not addressed any of appellant's arguments, it is because we have concluded they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D) and (E).

Affirmed in part and reversed in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0687-18T2